United States Bankruptcy Court
Northern District of Illinois
Eastern Division

In re:

William W Yotis III,

                              Debtor.

_____

Anthony Gasunas,

                              Plaintiff

              v.

William W Yotis III,

                              Defendant.

Bankruptcy No. 14-bk-2689

Chapter 11

Adversary No. 14-ap-321

## MEMORANDUM OPINION ON YOTIS'S MOTION TO DISMISS

This Adversary Proceeding relates to the bankruptcy petition filed by the debtor-defendant William W. Yotis III ("Yotis"), a former attorney, under Chapter 13 of the Bankruptcy Code. Creditor-plaintiff Anthony C. Gasunas ("Gasunas") filed his First Amended Complaint to determine the dischargeability of debt under 11 U.S.C. § 523 and to object to Debtor's discharge under 11 U.S.C. § 727. In short, Gasunas alleges that Yotis conned him out of about $50,000 by engaging in a series of lies from May 2009 to July 2010. Yotis moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6), F.R.C.P., Rule 7012 F.R. Bankr. P. Yotis also argues that Counts III and IV should be dismissed as these Counts are legally inapplicable to him.

## BACKGROUND

Gasunas's First Amended Complaint provides greater detail to the factual allegations of the Original Complaint. Gasunas alleges a series of transactions between the two parties which Gasunas claims to be fraudulent. The transactions took place over the course of about a year, dating from May 20, 2009 through July of 2010. Based on Gasunas's Amended Complaint these allegations include:

1. Yotis repeatedly claimed to be "on the straight and narrow," a "straight shooter," and generally reformed from his earlier schemes, despite his continuing to scheme and decieve. (Amended Complaint ¶ 12).

2. Yotis failed to disclose that he had been under investigation by the Illinois Attorney Registration and Disciplinary Commission for allegedly misappropriating funds during his time as an attorney. (Amended ¶ 14).

3. Yotis failed to disclose that he was sued by the Illinois Attorney General for fraudulent and/or deceptive business practices in connection with a construction business that Yotis entered into following his disbarment as an attorney. (Amended ¶ 32).

4. Yotis said he was visiting his sister in a psychiatric ward at night, when really he was compelled to spend nights in jail as part of a work release program. Gasunas alleges that this incarceration resulted from Yotis being arrested for possession of a controlled substance, which violated the terms of some earlier condition required for his release. (Amended ¶32)

5. On May 20, 2009, Yotis asked Gasunas to loan him $2,065.60 to secure the release of his car from the City of Chicago impound lot so that he could pick up his father from the airport. Gasunas provided the money, but was never paid back. (Amended ¶¶ 17-19).

6. In the summer of 2009, Yotis and Gasunas entered into a venture to purchase U2 concert tickets at a significantly discounted price and then resell them for face value. Yotis promised that both he and Gasunas would share the profits evenly. Gasunas gave $2,500 to Yotis in order to fund this venture. Yotis then allegedly bought and resold the tickets but never repaid Gasunas on this account. (Amended ¶¶ 20-23)

7. In late 2009 or early 2010, Yotis informed Gasunas that he had actually traded the U2 tickets for four Super Bowl tickets which Yotis claimed would net them a higher profit. Yotis then delayed paying Gasunas his share of profits from the Super Bowl

2

tickets by claiming there were scheduling conflicts between Yotis and the broker that prevented Yotis from being paid for those tickets. Gasunas alleges that on one occasion, Yotis told Gasunas to meet Yotis and the ticket broker at the ticket broker's office in Wheaton, Illinois. Neither Yotis nor the ticket broker arrived. After Gasunas waited for two hours, Yotis called Gasunas informing him that the ticket broker could not meet with them. Gasunas never met the ticket broker. Ultimately, Gasunas learned that profits from Super Bowl tickets, approximately $10,000, were used to pay a repair bill on Yotis's BMW. (Amended ¶¶ 24-29).

8.  Between May 2009 and July 2010, Yotis made a series of requests to Gasunas for cash loans. (Amended ¶ 30).

9.  On June 24, 2010, Gasunas loaned Yotis $8,940.00 in order to pay off his overdue mortgage bill. This appears to be the same transaction that was alleged in the Original Complaint, which resulted in the execution of a promissory note. (Amended ¶¶ 34-37). The promissory note itself stated that Gasunas had previously loaned Yotis $40,845.00 and that the parties "agree to terminate and cancel all prior notes and this note shall represent the total amount due Tony Gasunas from Bill Yotis." (Amended Exhibit B).

10. In order to induce Gasunas to loan money, Yotis said that his wife and daughter would leave him if he was unable to maintain mortgage payments on their home. He also said that if Gasunas would loan Yotis the money for mortgage payments then they will be "friends for life" and that Yotis "does not screw (sic) over his friends." (Amended ¶¶ 39-40).

11. On July 7, 2010 Yotis executed another promissory note borrowing an additional $2,500.00 and promised not to borrow again. (Amended Exhibit B). However, Gasunas alleged that Yotis later borrowed an additional $400 in order to travel to Detroit to negotiate the sale of the art work and comic collection that was pledged as collateral for the June 24, 2010 Note in order to repay the note. That deal fell through and Gasunas was never repaid. (Amended ¶ 42).

12. Yotis showed Gasunas correspondences indicating that Yotis would be paid for construction work and thereby induced Gasunas to loan more money. (Amended ¶ 35).

13. In August of 2010, Yotis used Gasunas's mailing address to solicit employment offers to which address Gasunas received two rejection letters addressed to Yotis. (Amended ¶ 43).

In total, Gasunas alleges that there were fifteen transactions, including those listed above, between him and Yotis between May of 2009 and July of 2010. (Amended ¶ 34). Gasunas alleges that during this time Yotis had used fraudulent misrepresentations and omissions that were specified to induce him to lend money. In order to make the loans to Yotis, Gasunas had to take out cash advances from his credit cards and home equity line of credit. (Amended ¶ 34). In total, Gasunas alleges that he loaned a total of $52,345.00, not including any interest and fees. Prior to the filing of this case, on April 25, 2012, Gasunas was awarded a state court judgment against Yotis for that amount plus statutory interest. (Amended ¶ 65).

## DISCUSSION

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer a proceeding to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), (J), and (O). It seeks to determine the dischargeability of a debt and a debtor's eligibility for discharge. Therefore, it "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

## SUFFICIENCY OF THE PLEADINGS

Yotis's motion to dismiss tests whether Gasunas's Amended Complaint meets the pleading requirements under Federal Rules of Civil Procedure and applicable precedent. A motion to dismiss under Rule 12(b)(6) Fed. R. Civ. P., made applicable here by Rule 7012(b) Fed. R. Bankr. P., tests sufficiency of a complaint rather than the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). All well-pleaded allegations of the complaint are assumed true and read in the light most favorable to the plaintiff. *Levy v. Pappas*, 510 F.3d 755, 764 (7th Cir. 2007). If the complaint contains allegations from which a trier of fact may reasonably infer that proof will be available at trial, dismissal is improper. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

The Motion also tests whether certain counts of the Amended Complaint that now specifically refer to certain statutory actions not referred to in the Original Complaint "relate back" to the original filing so as not to be deemed untimely.

### Rule 8(a)(2) : General Rules of Pleading

Rule 8(a)(2) Fed. R. Civ. P., made applicable by Rule 7008 Fed. R. Bankr.P., generally requires that the pleader provide "a short and plain statement of the claim showing that the pleader is entitled to relief," giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the plaintiff need not include all possible detailed factual allegations, "the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted). Plausibility does

5

not require probability, but does require something "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A] defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 802–03 (7th Cir. 2008).

Opinions from panels of the Seventh Circuit Court of Appeals suggest that *Twombly* did not "signal[ ] an end to notice pleading in federal courts." *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008) (citing *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)); *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("Our system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact."); *Smith v. Duffey*, 576 F.3d 336, 339–40 (7th Cir. 2009) (suggesting that some opinions have placed excessive meaning on *Twombly*). A complaint should be dismissed if "the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)).

Yotis argues that under *Stanard v. Nygren*, dismissal is appropriate "where lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful act." 658 F.3d 792, 797 (7th Cir. 2011). In *Stanard*, the Seventh Circuit opinion affirmed the dismissal of a complaint with prejudice when the plaintiff repeatedly failed to file a comprehensible complaint. Not only was the complaint riddled with lack of punctuation, writing that was "little more than gibberish," grammatical and syntactical errors, but the plaintiff's lawyer failed to correct the errors when instructed in detail by the district court judge. *Id.* at 798-99. That panel opinion illustrated the incoherence of the plaintiff's lawyer's writing with a 345-word sentence from the second amended complaint. *Id.* at 798 fn.7. It made clear that

6

dismissal for incomprehensibility is the exception, not the rule, saying, "Prolixity is a bane of the legal profession but a poor ground for rejecting potentially meritorious claims. Fat in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal." *Id.* at 797 (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

Further, complaints are construed in favor of drafters in order to do substantial justice. *Id.* (citing *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992); *see* Rule 8(e) ("Pleadings must be construed so as to do justice."). On a motion to dismiss for failure to state a claim, all well-pleaded allegations of the complaint are assumed true and read in the light most favorable to the plaintiff. *Levy v. Pappas*, 510 F.3d 755, 764 (7th Cir. 2007). If the complaint contains allegations from which a trier of fact may reasonably infer that proof will be available at trial, dismissal is improper. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

Here, the Amended Complaint is not a model of clarity, but it is does contain short and plain statements of what Yotis did that Gasunas contends entitles him to relief, as required by Rule 8. It is far from incomprehensible. Yotis argues that an incorporation of all of the earlier facts pleaded as background is improper because the re-allegation of previously alleged paragraphs leaves the defendant and the court with substantial confusion. But Rule 10 provides specifically that, "A later pleading may refer by number to a paragraph in an earlier pleading." There are sixty-five repleaded paragraphs, over fourteen pages. There is no reason why defendant cannot admit or deny those allegations.

## Rule 9(b): Pleading Allegations of Fraud with Particularity

Rule 9(b) provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b), F.R.C.P., made applicable by Rule 7009 F.R. Bankr. P.; *see Borsellino v. Goldman*

*Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation omitted); *see also Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (describing Rule 9(b)'s particularity requirement as the "who, what, where, when and how" of the alleged fraud).

The particularity requirement of Rule 9(b) should be read in conjunction with Rule 8(a)'s "short and plain statement" pleading requirement. *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 172 (Bankr. N.D. Ill. 1997). Thus, it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have been set forth adequately. *Id.* (citing *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). "[T]he who, what, when, and where aspects of the fraud need not be related with exact details in the complaint as a journalist would hope to relate them to general public." *Zamora v. Jacobs (In re Jacobs)*, 403 B.R. 565, 573 (Bankr. N.D. Ill. 2009). It is only necessary to set forth a basic outline of fraud in order to alert the defendant of the purported fraud he is defending against. *Barr*, 207 B.R. at 173 (citing *Vicom Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)). Moreover, a plaintiff is not expected to plead facts as to which they lack access prior to discovery. *Barr*, 207 B.R. at 172–73 (citing *Katz v. Household Inter., Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996)).

## COUNT I: §523(a)(2)(A) & (B)

Section 523(a)(2) provides that certain debts are not dischargeable. Section 523(a)(2)(A) provides three separate grounds for holding debt nondischargeable: false pretenses, false representation, and actual fraud. *In re Casali*, No. 13-bk-30521, 2014 WL 4296664 at \*4 (Bankr. N.D. Ill. 2014); *In re Jacobs*, 448 B.R. 453, 470 (Bankr. N.D. Ill. 2011). A complaint based on false representation or false pretenses must show that: "(1) the

8

debtor made a false representation of fact, a representation (2) which the debtor (a) either knew was false or made with reckless disregard for its truth and (b) was made with an intent to deceive, (3) upon which the creditor justifiably relied." *In re Jacobs*, 448 B.R. 453, 471 (Bankr. N.D. Ill. 2011). Actual fraud requires neither a misrepresentation nor reliance. *Id.* at 471. Section 523(a)(2)(B) prevents the discharge of debt "obtained by . . . use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, . . . , relied; and (iv) that the debtor cause to be made or published with intent to deceive." § 523(a)(2)(B). Gasunas relies on both clauses (A) and (B) and therefore all possible grounds will be considered.

Count I sufficiently pleads under the heightened pleading standard of Rule 9 of the Federal Rule of Civil Procedure. This requirement has been described as the "who, what, when, where, and how" of the fraud pleading. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). As discussed above, this does not mean that fraud must be pleaded with exact detail. *In re Jacobs*, 403 B.R. at 573; *In re Barr*, 207 B.R. 168, 172 (Bankr. N.D. Ill. 1997).

Despite what Yotis claims, Gasunas is able to establish the who, when and where of this alleged fraud. The "who" is Yotis, the debtor. (¶ 133). The when and where are the "approximately fifteen transactions, between May 2009 and July 2010." (¶ 34). More particularized pleading would not serve the purposes of Rule 9(b). As an Eight Circuit opinion explains, "the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). Here, requiring Gasunas to plead all the specific dates of transactions would not serve the purpose of Rule 9(b) because he has already pleaded enough to allow Yotis to respond specifically. "A relaxed rule of pleading may be allowed as an exception in cases where the alleged conduct took place over a long period of time or involved numerous occurrences." *U.S.*

9

*ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 439 (W.D.N.Y. 2008) (internal quotation marks omitted). Further, the Complaint alleges that each time money was loaned after 2010, Yotis created a new promissory note, and each time destroyed the previous promissory note. (¶ 37.)

Yotis argues that the complaint merely recites the § 523(a)(2) requirements and then provides a series of conclusory statements which do not inform either the Court or the debtor-defendant what the cause of action is. Yotis argues that the Amended Complaint is too confusing, disjointed and repetitive to conform with Rule 10(b), F.R.C.P. as incorporated by Rule 7010, F.R. Bankr. P. That argument is not valid.

## § 523(a)(2)(A)

*False Pretensess*

False pretenses include "implied misrepresentations of conduct intended to create or foster a false impression." *In re Sarama*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996). A false presence does not require overt misrepresentation. *Id.* at 928. Rather, "omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that the omissions or failure to disclose create a false impression which is known by the debtor." *Id.* False pretenses can include:

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor . . . .
>
> A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result of inadvertence.

*In re Paneras*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996).

*False Representation*

A false representation is an express misrepresentation demonstrated either by a spoken or written statement or through conduct. *In re Sanchez*, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002). "[F]ailure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud. *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005). A false representation may be "a statement that the speaker will do something it plans not to do." *Id.*

Here, Gasunas has alleged a litany of promises as "false representations." Since this is a motion to dismiss under Rule 12(b)(6), "all well-pleaded allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the non-moving party." *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012). Accordingly, where Gasunas has alleged that Yotis made "misrepresentations" (¶ 45), the inference must be drawn that those misrepresentations included promises Yotis made with no intent to keep them. Those promises include:

> ›   promises of prompt repayment made on July 12 and August 30, 2010 (¶ 46-b.);
> ›   promises for reimbursement of Gasunas's costs for taking out cash advances (¶ 46-c.);
> ›   the promise to repay (¶ 46-d.);
> ›   the grant of an assignment of wages (¶ 46-e.).;
> ›   the grant of a security interest in original art and a comic book collection (¶ 46-f.);

Whether Yotis had the intent to break the promises when he made them is a question of fact for trial. Even under Rule 9(b), F.R.C.P., intent may be alleged generally. So too reliance, which is a state of mind.

*Actual Fraud*

Actual fraud requires neither a misrepresentation nor reliance. *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000). Actual fraud "embraces all the multifarious

11

means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth." *Id.* at 893 (citing *Stapleton v. Holt*, 207 Okla. 443, 250 P.2d 451, 453-54 (Okla. 1952)). Moreover, "[n]o definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *Id.* To establish a claim based on "actual fraud," a creditor must prove that (1) actual fraud occurred, (2) the debtor intended to defraud the creditor, and (3) the debtor's actual fraud created the debt at issue. *In re Jairath*, 259 B.R. at 314.

Gasunas has alleged the what and how of an actual fraud: The allegations contend in effect that Yotis was a con artist who scammed plaintiff out of fifty thousand dollars in a long con. Yotis is said to have played on their shared personal tragedy of losing family members to automobile accidents to gain Gasunas's trust. (¶ 7, 8, 11.) He told a half truth about his earlier disbarment in order to convince Gasunas that he had changed his ways and could be trusted. (¶ 13, 14.) Yotis cultivated a shared interest in chess. (¶ 10.) Yotis allegedly covered up his incarceration at night by telling Gasunas that he was visiting his sister in a psychiatric ward. (¶ 32.) Apparently, the real or feigned need by Yotis to take care of his family served as the impetus for Gasunas to advance money on several occasions. Once, Yotis needed to take his car out of the pound in order to pick up his father at the airport. (¶ 17.) Several times, Yotis, in tears no less, begged Gasunas for loans in order to make mortgage payments so that his wife and daughter would not leave him. (¶ 39.)

Yotis argues that all Gasunas has managed to allege is a friendship gone wrong. A friendship gone wrong is certainly one possible explanation, but so is a feigned friendship in furtherance of a scheme to defraud. Which explanation is true is a question of fact, to be determined by evidence. Accordingly, Count I under § 523(a)(2)(A) should not be dismissed.

12

## § 523(a)(2)(B): False Statements in Writing

For a §523(a)(2)(B) claim, the creditor must prove that (1) the debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the debtor's financial condition; (4) the debtor intended to deceive the creditor; and (5) the creditor reasonably relied on the statement. *In re Philopulos*, 313 B.R. 271, 280 (Bankr. N.D. Ill. 2004) (citing *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995)).

Gasunas alleged that "In an effort to induce Gasunas to lend money to Debtor, Debtor showed Gasunas email correspondences indicating that Debtor was going to get paid from his work as a contractor." (¶ 35.) Statements about a person's work and pay are statements about his financial condition. *See In re Cohen*, 334 B.R. 392, 398 (Bankr. N.D. Ill. 2005). Email correspondence is in writing. As for material falsity, it is possible to infer that the emails contained falsehoods, and that inference must be drawn in favor of Gasunas. Their truth or falsehood is a matter of fact that must be determined by evidence. Further, Gasunas alleges intent and reliance generally, as he is allowed to do.

### Justifiable Reliance

Yotis also argues that Gasunas has failed to plead justifiable reliance because Gasunas's reliance was "contradicted by the Plaintiff's admissions of numerous indications [#9, 13, 16, 17, 19, 22, 31, 39, 40, 42, among others][1] that Defendant was having serious financial and personal difficulties." (Motion, Dkt. 39 at 9.) Yotis argues that Gasunas relied "blindly," and that therefore his reliance was not justifiable, citing *Field v. Mans*, 516 U.S. 59, 71 (1995). Yotis's cited case belies his argument.

In *Field v. Mans*, the Supreme Court ruled that only justifiable reliance, rather than reasonable reliance, is necessary for a creditor to prevail under § 523(a)(2)(A). Justifiable reliance can be less than reasonable reliance:

---

[1] Citations to the background facts, such as the one here, litter Yotis's motion. This belies Yotis's argument that the complaint is too confusing for Yotis to mount a defense.

> Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.

*Id.* at 70-71 (1995) (citing the Restatement (2d) of Torts, § 545A Cmt. b). Reliance is not justifiable only when "the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. *Id.* at 71 Indeed, "Naïfs may recover, at common law and in bankruptcy, but lots of creditors are not at all naive." *Id.* at 76. Reliance may be justifiable even where the plaintiff has not undertaken any sort of investigation because a defendant who consciously misrepresents "can not offer as a defense the plaintiff's failure to make the investigation..." *Id.* at 71 (quoting Prosser's Law of Torts (1978), § 108 at 717).

Here, allegations of the serious personal and financial issues faced by Yotis do not necessarily make Gasunas's reliance unjustifiable. Perhaps the serious difficulties alleged were the reason for extending a loan to a friend. Someone loaning money to a friend facing financial difficulties who relies on the friendship may be justifiable in his reliance. Perhaps the seriousness of the alleged difficulties meant that Gasunas was naïve, or even that he was acting blindly in light of the circumstances. These are questions of fact, to be determined by evidence.

Even though Gasunas pleaded that his reliance was reasonable instead of justifiable, reasonable reliance is a higher standard that encompasses justifiable reliance. Therefore, Count I should not be dismissed for failure to plead justifiable reliance expressly.

### COUNT II: § 523(a)(4)

Section 523(a)(4) bars the discharge of debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). For embezzlement, a

14

creditor-plaintiff must prove that: (1) the debtor appropriated the creditor's property for the debtor's own benefit; and (2) the debtor acted with fraudulent intent or deceit. *In re Cohen*, 334 B.R. 392, 400 (Bankr. N.D. Ill. 2005). In his Amended Complaint, Gasunas alleges that Yotis embezzled funds provided to him by Gasunas for their joint venture originally regarding the U2 tickets. However, since this Count does not appear in the original complaint, Yotis argues that it should be dismissed as it is barred by the deadline for objections to dischargeability, and fails to relate back per Rule 15 of the Federal Rules of Civil Procedure. Yotis also argues that Gasunas fails to plead with particularity as required by Rule 9, F.R. Civ. P.

**Relation Back**

Rule 15(c) provides that "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." F.R.C.P. 15; as made applicable by Rule 7015, F.R. Bankr. P. Amendments should be freely allowed under Rule 15(c) in order to effectuate the general policy favoring trial of cases on the merits. *Hill v. Shelander*, 924 F.2d 1370, 1376 (7th Cir. 1991).

Relation back under Rule 15 is appropriate when "the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint to the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006) (citations omitted). Rule 15(c) requires that facts plead in the original complaint provided the defendant with sufficient notice of the transactions asserted or which the newly specified theories of the amended complaint are based. "[N]otice to the opponent is clearly the critical element in the Rule 15(c) determination." *Re/Max Props. Inc. v. Barnes (In re Barnes)*, 96 B.R. 833, 836 (Bankr. N.D. Ill. 1989) (citing *Staren v. Am. Nat'l Bank & Trust Co. of Chi.*, 529 F.2d 1257, 1263 (7th Cir. 1976)). The amended

15

complaint should be deemed timely if a sufficient factual nexus exists between the original and amended complaints such that the original pleadings give fair notice of the factual situations from which the amended pleadings arise. See *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001); *Gerardo*, 173 B.R. at 388.

A sufficient factual nexus exists where the amended complaint asserts a newly specified claim "based on same core of facts advanced in the original." *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002). If the new counts have the same factual basis as the original count, then the amendments arise "out of the same transaction" as the original pleading and thus relate back under Rule 15(c). *Gerardo*, 173 B.R. at 388–89. If, however, an amendment states a new claim based on a materially different set of facts than the original claim, the amendment does not relate back. *Id.* at 389.

Here, the original complaint alleged that Yotis fraudulently induced Gasunas to loan Yotis money and in return Yotis signed a promissory note to repay Gasunas. (Original ¶ 17). The Note, in turn, reflected that Yotis promised to pay Gasunas $49,845.00, which includes $8,940.00 that Gasunas was lending Yotis at that time, as well as for $40,905.00 that Gasunas had already loaned Yotis. (Amended Exhibit B). Moreover, the Note states that the parties "agree to terminate and cancel all prior notes." *Id*. The prior debt included Yotis's scheme to sell U2 tickets and the loan Gasunas made to Yotis for it. As a result, Yotis should have been on notice of all the events and debts that led to the creation of that note, including the debt from the U2 ticket scheme. Therefore, Count II sufficiently relates back to the original complaint to comply with Rule 15.

## Pleading with Particularity

Yotis also moves to dismiss for failure to plead with sufficient particularity under Rule 9(b). As discussed above, Rule 9(b) requires Gasunas to establish the "who, what, when, where, and how" of the fraud pleading. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). For this Count he does.

16

*Who*: "[T]he Debtor misappropriated funds provided by Gasunas . . ." (¶ 203).

*What*: "Gasunas entrusted $2,500 to Debtor ostensibly for Debtor to purchase U2 concert tickets, but Debtor failed to give to Gasunas his portion of the funds resulting from the sale of the tickets." (¶ 205).

*When and Where*: ". . . in connection with Debtor's scheme to purchase and resell U2 concert tickets" which occurred in the summer of 2009. (¶¶ 20, 203).

*How*: Yotis borrowed $2,500 from Gasunas to purchase 100 U2 concert tickets at a discounted price and then resell them for a profit. Yotis purchased the U2 tickets. (¶¶ 20-21). Without Gasunas's permission, Yotis traded those tickets for four Super Bowl tickets. (¶ 24). Eventually, Yotis received the proceeds of the sale of Super Bowl tickets, approximately $10,000, and used it to pay for Yotis's car repairs. (¶ 29).

Thus, if all the allegation are taken as true, Gasunas has sufficiently pleaded that Yotis embezzled the funds that Gasunas had entrusted to him. Therefore, Yotis's Motion to Dismiss Count II for failure to state a claim will be denied.

## COUNT III: §523(a)(6)

Section 523(a)(6) prevents the discharge of debt caused by "willful and malicious injury by debtor to another entity or to the property of another entity." § 523(a)(6). In Chapter 13, when a debtor complete all payments under the plan, a debt that would be nondischargeable under § 523(a)(6) is nevertheless discharged. *See* § 1328(a)(2) (excluding § 523(a)(6) from the list of non-dischargeable debts). This is colloquially known as the Chapter 13 superdischarge. If a debtor moves for a hardship discharge under § 1328(b), then any debt of the kind specified in § 523(a) is nondischargeable. § 1328(c)(2).

Rule 4007(d) of the Federal Rules of Bankruptcy Procedure provides that the proper occasion for filing a complaint under section 523(a)(6) in a Chapter 13 case is after the debtor seeks a hardship discharge under § 1328(b). F.R. Bankr. P. 4007; *see also* §1328(b); *In re Liescheidt*, 404 B.R. 499 (Bankr. C.D. Ill. 2009). Furthermore, "[w]heather a

17

Section 523(a)(6) claim in a Chapter 13 case is ripe for decision is a question of constitutional ripeness since resolution of the issue has no meaningful effect until and unless the debtor moves for a hardship discharge." *In re Liescheidt,* 404 B.R. at 505. Yotis has not moved to have a hardship discharge under section 1328(b), therefore a determination of whether the debt to Gasunas arose out of willful and malicious conduct is premature at this time. *See id.* at 504 Accordingly, Count III is not ripe and will be dismissed without prejudice.

## COUNT IV: §727(a)(3)

Section 727(a)(3) of the Bankruptcy Code bars the debtor from discharging debts on account of the debtor having "concealed, destroyed, mutilated, falsified, or failed to keep . . . any recorded information . . . from which the debtor's financial condition . . . might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). This section exclusively applies to cases filed under chapter 7 of the Bankruptcy Code. § 103(b). Yotis has filed here as a chapter 13 debtor; as such § 727(a)(3) is inapplicable to him unless he converts his case and seeks discharge under Chapter 7. If Yotis does convert to a Chapter 7, there will be a new period for filing objections to discharge. Rule 1019(2)(A), F.R. Bankr. P. Until such time, Count IV is not ripe and will be dismissed without prejudice .

18

## CONCLUSION

For the foregoing reasons, Yotis's motion will be granted in part by separate order. Counts III and IV will be dismissed without prejudice. However, Yotis's motion to dismiss Counts I and II will be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated November 24, 2014